Filed 6/14/22  P. v. Reynaud CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>ANNAMARIE REYNAUD,<br><br>    Defendant and Appellant. | 2d Crim. No. B313412<br>(Super. Ct. No. 1443063)<br>(Santa Barbara County) |

AnnaMarie Reynaud appeals a victim restitution order following her conviction of diversion of construction funds (Pen. Code, § 484b),[1] a felony; obtaining services/money by false pretenses (§ 532, subd. (a)), a felony; and contracting without a license (Bus. & Prof. Code, § 7028, subd. (a)), a misdemeanor.

Pursuant to a plea bargain, Reynaud pled guilty to various offenses, including diversion of construction funds, obtaining services by false pretenses, and contracting without a license.

---

[1] All further statutory references are to the Penal Code unless otherwise stated.

She also admitted that she diverted property of a value exceeding $200,000 and defrauded residential property owners.

Reynaud was placed on probation and ordered to pay restitution to her victims, Ron and Laura Dinning, who had paid Reynaud money to build a house for them. We conclude, among other things, that the trial court did not abuse its discretion by ordering restitution in the amount of $2,598,917. We affirm.

FACTS

In 2013, the People filed a five-count felony complaint against Reynaud. They alleged she had committed the offense of diversion of construction funds (§ 484b) (count 1); grand theft of personal property (§ 487, subd. (a)) (count 2); obtaining services/money by false pretenses (§ 532, subd. (a)) (count 3); failure to file an income tax return (Rev. & Tax Code, § 19706) (count 4); and contracting without a license (Bus. & Prof. Code, § 7028, subd. (a)) (count 5).

Reynaud entered into a plea agreement. She pled guilty to counts 1, 3, and 5. She also made the following admissions: she 1) unlawfully diverted construction funds from the Dinnings "in an amount exceeding $200,000"; 2) "fraudulently" obtained money from the Dinnings; and 3) "acted in the capacity of a general contractor when [she] was not licensed by the Contractor's State Licensing Board and [she] knew [she] was not licensed."

The trial court held a victim restitution hearing and made the following factual findings:

The Dinnings lost their Montecito home to the Tea Fire on November 13, 2008. Reynaud sent them an unsolicited fax claiming she could build a replacement "green home" that would

2

never burn and could be built at the same or less cost than "conventional" construction.

Relying on Reynaud's representations, the Dinnings signed a "Sal Construction" contract "with the understanding" that Reynaud would be acting as the general contractor for Sal Construction. The Dinnings did not know that Reynaud was not a general contractor. They would not have entered into the construction contract had they known that fact.

Alonso Salizar was the "principal" general contractor of Sal Construction. Before executing the contract, Reynaud asked Salizar to "perform general contractor functions under his license" as a "Project Manager."

Salizar told Norma Hansen, a district attorney investigator, that he had been injured and was not able to provide any oversight for the construction project. Reynaud then performed general contracting functions for the Dinnings' project. She took the bid for the job, wrote and presented the construction contract, paid subcontractors, ordered materials, and collected payments from the Dinnings.

In 2014, Hansen told the Dinnings that homeowners had filed complaints against Reynaud with the California Contractors State Licensing Board (CCSLB) dating back to 1996. CCSLB "violation citations" included, among other things, contracting without a license, false advertising, aiding and abetting an unlicensed contractor. The Dinnings also learned that Reynaud had not held a contractor's license since 2003.

The Dinnings retained an attorney to terminate the construction contract because Reynaud was contacting without a license, she did not complete the project within the contract period, she made "progress draws unrelated to the progress of the

3

work," she did not use licensed subcontractors, she failed to pay suppliers and subcontractors, and she diverted funds paid for the construction contract.

The Dinnings paid $546,942.55 toward the full contract price of $873,000 for the completed job. They had paid 62 percent of the contract price but the project was only 30 to 40 percent complete. The Dinnings did not have sufficient funds to complete the unfinished construction work. They had no home to live in, monthly mortgage payments, and they had exhausted their insurance proceeds. They had to "short sell" the uncompleted home to Michael Tansy and they suffered a substantial financial loss in the amount of $2,598,917.

The trial court found Reynaud did not meet "her burden of proof" to contest the amount of loss claimed by the Dinnings. It issued an order of restitution in the amount of $2,598,917.

DISCUSSION

Reynaud contends the evidence at the restitution hearing was not sufficient to support the trial court's findings and the amount of restitution it ordered. We disagree.

A court may compensate a victim for any economic loss which is proved to be the direct result of the defendant's criminal behavior. (*People v. Kelly* (2020) 59 Cal.App.5th 1172, 1179.) A victim's " 'restitution right is to be broadly and liberally construed.' " (*Id.* at p. 1180.) A victim's statement of the amount of loss "may be sufficient to support a prima facie showing of loss." (*Id.* at p. 1183.)

*The Evidence at the Restitution Hearing*

At the restitution hearing, the prosecutor introduced, without objection, the declarations of Ron Dinning and Michael Tansy. Dinning declared that he did not know Reynaud was not

4

a licensed contractor.  Had he known that he "would have never hired her."  Reynaud did not complete the construction project. "While [the Dinnings] had paid [Reynaud] $546,942.55 towards the contract price of $873,000, or approximately 62% of the contract price, because of theft, incompetence, or both, by [Reynaud], the project was only between 30-40% complete."  The Dinnings terminated the contract with Reynaud, but without "sufficient funds to complete the project and no house to live in, but still having to pay a substantial mortgage payment, [they] had no choice but to sell [their] uncompleted home in a short sale, which Michael Tansy purchased for $400,000."  With interest accrued from the date of their termination letter (November 2010), their total loss was $2,598,917.

Tansy declared he purchased the uncompleted house in a short sale from the Dinnings.  The electrical "was installed but had to all be torn out because it wasn't to code."  The "gauge of the wiring was incorrect" and had to be removed.  After construction was eventually completed, the property had an appraised value of $1.6 million.

Reynaud testified she was "the project manager" and Sal Construction was the "general contractor."  She was not "acting in the capacity of a general contractor."  She never claimed she was a general contractor.  "[T]he activities . . . that I manage on the projects for Sal Construction is not crossing or blurring any lines that we are conducting the business illegally."  She pled guilty and admitted she was acting as a general contractor and not licensed, but she made those admissions "under duress."  Ron Dinning lied to the district attorney investigator who convinced the prosecutor to believe "their money had been taken and inappropriately applied.  And that did not happen."

5

Reynaud said she was "fronting money to the Dinnings to get this building done" because they did not have the money. She provided a detailed list of the money she paid for construction materials and costs. She was paid "less than what" she should have been paid for the rebuilding work completed on the house.

*Abuse of Discretion*

*By Not Reducing the Restitution Amount?*

Reynaud contends the trial court erred "in not reducing the alleged loss by the value added by the rebuilding performed under the contract and the costs of supplies ordered and delivered to the site." (Capitalization omitted.) She claims the court abused its discretion by not crediting her testimony on these issues.

The People respond that Reynaud "is estopped by her guilty plea from asserting" this claim. The People contend: 1) because Reynaud pled guilty to contracting without a license, she is subject to "the contractors' licensing law–which requires an unlicensed contractor to disgorge all compensation received without reductions or offsets for the value of materials or services it provided," and 2) the trial court properly rejected Reynaud's testimony by finding she was not credible.

" 'A restitution order is reviewed for abuse of discretion and will not be reversed unless it is arbitrary or capricious.' " (*People v. Kelly*, *supra*, 59 Cal.App.5th at p. 1181.) At the restitution hearing, "it is the defendant's burden to prove 'that the amount claimed is excessive.' " (*Id.* at p. 1185.)

In her guilty plea Reynaud admitted that she was an unlicensed contractor. Consequently, she may not claim that she is entitled to an offset or reduction for the value of her services or the expenses she incurred. State law "requires an unlicensed

6

contractor to return all compensation it received, without reductions or offsets for the value of materials or services it provided." (*Karton v. Ari Design & Construction, Inc.* (2021) 61 Cal.App.5th 734, 739-740.)  Moreover, Tansy said Reynaud's work was incomplete and substandard.  The electrical work was not compliant with the building code and it had to be removed.

The trial court also found Ron Dinning's declaration was credible, and Reynaud's testimony was not.  It said that Reynaud was "less than forthcoming in providing her personal financial information as directed by the court and probation" after being placed on probation; that she claimed she was not guilty of the crime that she had previously admitted.  A defendant's testimony may be impeached by a prior conviction.  (*People v. Clark* (2011) 52 Cal.4th 856, 932.)  The court could find that her claim that she was not acting as a general contractor was undermined by her testimony about her activities overseeing the construction work.

Reynaud claimed she did not divert construction funds, but she previously had admitted that she had "unlawfully diverted construction fund[s]" from the Dinnings "in an amount exceeding $200,000."  The percentage of work completed on the project was substantially lower than the percentage of money the Dinnings paid on the contract to complete the job.  The trial court said: "Reynaud's testimony was simply not credible," it "should be disregarded," and, therefore, "this Court has only evidence from the victims, by way of statements in the probation report and declarations from Ron Dinning and Michael [Tansy]" that support the victims' claim of financial loss.

We do not weigh the evidence, resolve evidentiary conflicts, or decide the credibility of the witnesses.  Those are matters

exclusively decided by the trial court.  (*People v. Miranda* (2016) 2 Cal.App.5th 829, 838.)  There was no abuse of discretion.

DISPOSITION

The order is affirmed.

<u>NOT TO BE PUBLISHED.</u>


GILBERT, P. J.

We concur:


YEGAN, J.


PERREN, J.

James E. Herman, Judge

Superior Court County of Santa Barbara

_____

Jolene Larimore, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Paul M. Roadarmel, Jr. and Allison H. Chung, Deputy Attorneys General, for Plaintiff and Respondent.